UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

CRISTIAN RODRIGUEZ,

                     Plaintiff,

           v.

KIRSTJEN NIELSEN, *Secretary of Homeland Security,* L. FRANCIS CISSNA, *Director of United States Citizenship And Immigration Services*, MICHAEL PAUL, *Director of United States Citizenship and Immigration Services Vermont Service Center*, MARK HAZUDA, *Director of United States Citizenship and Immigration Services Nebraska Service Center*, and DONALD NEUFELD, *Director of United States Citizenship and Immigration Services Service Center Operations*,

                     Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
16-CV-7092 (MKB)

MARGO K. BRODIE, United States District Judge:

    Plaintiff Cristian Rodriguez[1] commenced the above-captioned action on December 23, 2016, and filed an Amended Complaint on June 14, 2017, against Defendants Kirstjen Nielsen, L. Francis Cissna, Laura Zuchowski, Mark Hazuda, and Donald Neufeld.[2]  (Compl., Docket Entry No. 1; Am. Compl., Docket Entry No. 17.)  Plaintiff asserts claims under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (the "APA"), and seeks declaratory,

---

    [1]  While Plaintiff's name has been spelled inconsistently in the parties' briefing as "Cristian" and "Christian," Plaintiff states in his declaration submitted in connection with his petition for U nonimmigrant status ("U Visa petition") that, "the correct spelling of his name is 'Cristian' rather than 'Christian.'"  (Decl. of Cristian Rodriguez ¶ 1, annexed to Decl. of Michael Wishnie ("Pl. Decl.") as Exhibit E, Docket Entry No. 39-7.)

    [2]  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the caption has been updated to reflect the current public officers in the respective positions.

mandamus, and injunctive relief in connection with Defendants' delay in processing his petition for U nonimmigrant status ("U Visa")[3] and determining his eligibility to receive an Employment Authorization Document ("EAD"). (Am. Compl.)

Currently before the Court are Defendants' motion to dismiss the Amended Complaint, or, in the alternative, for summary judgment, and Plaintiff's cross-motion for summary judgment. (Defs. Mot. to Dismiss or for Summ. J. ("Defs. Mot."), Docket Entry No. 34; Defs. Mem. in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 35–37; Pl. Mot. for Summ. J. ("Pl. Mot."), Docket Entry No. 38; Pl. Mem. in Supp. of Pl. Mot. ("Pl. Mem."), Docket Entry No. 39.) For the reasons set forth below, the Court denies Defendants' motion for summary judgment and grants in part and denies in part Plaintiff's motion for summary judgment.

## I. Background

### a. Plaintiff's U Visa petition

Plaintiff, a native and citizen of Ecuador, filed his petition for a U Visa in August of 2015. (Form I-918 Petition for U Nonimmigrant Status ("Form I-918"), annexed to Decl. of Joseph A. Marutollo ("Marutollo Decl.") as Ex. A, Docket Entry No. 36-1; Decl. of Cristian Rodriguez ("Pl. Decl.") ¶ 3, annexed to Decl. of Michael Wishnie ("Wishnie Decl.") as Ex. E, Docket Entry No. 39-7.) He has lived in the United States since 2004, and currently resides in Queens, New York with his girlfriend and her six-year old daughter, both of whom he supports financially. (Pl. Decl. ¶¶ 5, 9–10.) Plaintiff has physical custody of his seven-year old son on weekends. (*Id.* at ¶ 8.)

_____

[3] U Visas are awarded to certain victims of crime who cooperate with law enforcement in the investigation or prosecution of a crime. (Defs. Mem. in Supp. of Defs. Mot. ("Defs. Mem.") 2, Docket Entry No. 35–37.)

### i. November of 2011 incident

On November 28, 2011, an individual impersonating a police officer broke into Plaintiff's apartment (the "November 2011 Incident"). (Pl. Statement of Undisputed Facts Pursuant to Local R. 56.1 ("Pl. 56.1") ¶ 2, Docket Entry No. 39.) The intruder stole a knife from the kitchen and attempted to enter a locked bedroom, where Plaintiff was hiding with his then one-year-old son and his son's mother. (*Id.* ¶ 3.) Plaintiff and his family were trapped inside their bedroom for thirty minutes. (*Id.* ¶ 4.) After the assailant left, Plaintiff called the police. (*Id.* ¶ 5.)

When the police arrived, Plaintiff accompanied them around the neighborhood and identified the assailant. (*Id.* ¶ 6.) Plaintiff also identified a knife located on the assailant's person as the one stolen from his kitchen. (*Id.* ¶ 7.) The intruder was charged with several crimes in connection with the break-in, and ultimately pleaded guilty to burglary in the second degree. (*Id.* ¶¶ 8–9.) Plaintiff did not apply for U Visa status immediately after this incident.

### ii. July of 2014 Order of removal

Although the factual circumstances are unclear, prior to the November 2011 Incident, immigration authorities detained Plaintiff in June of 2007. (Immigration Court Decision, annexed to Marutollo Decl. as Exhibit C, Docket Entry 36-4.) Over seven years later, on July 14, 2014, an Immigration Judge ordered Plaintiff removed from the United States. (*Id.*) Plaintiff appealed to the Board of Immigration Appeals ("BIA"), but the BIA dismissed the appeal on November 20, 2015. (*Id.*) Plaintiff moved to reopen the removal proceedings but the BIA denied his motion. (*Id.*)

### iii. Plaintiff's application for a U Visa

Prior to the BIA's denial, on April 9, 2015, Carmencita N. Gutierrez, Director of the Office of Immigrant Affairs at the Queens County District Attorney's Office, completed and signed a Form I-918 Supplement B, U Nonimmigrant Status Certification in support of Plaintiff's U Visa petition. (Defs. Resp. to Pl. Statement of Undisputed Facts Pursuant to Local R. 56.1 ("Defs. Resp. 56.1") ¶ 10, Docket Entry No. 41.) In a letter appended to the Form I-918 Supplement B, Gutierrez stated that Plaintiff was "helpful to the investigation and prosecution of the crimes committed against him." (Gutierrez Letter, annexed to Wishnie Decl. as Exhibit C, Docket Entry No. 39-5.)

On August 11, 2015, one month after the BIA dismissed Plaintiff's appeal, Plaintiff submitted a U Visa petition, including a Form I-918 Petition for U Nonimmigrant Status ("Form I-918 U Visa Petition"), to the United States Citizenship and Immigration Services ("USCIS"). (Defs. Resp. 56.1 ¶ 13.) On August 14, 2015, Plaintiff received notice from USCIS's Vermont Service Center acknowledging that it had received his U Visa petition on August 12, 2015. (*Id.* ¶ 20.)

As of the filing of the parties' cross-motions, USCIS had neither reviewed Plaintiff's U Visa petition nor granted him an EAD. (*Id.* ¶¶ 21, 27, 29.) The USCIS website currently shows an estimated U Visa petition processing time of four years at the Vermont Service Center.[4] (*Id.* ¶ 22; https://egov.uscis.gov/processing-times/ (last updated Sept. 29, 2018).)

---

[4] The USCIS website currently shows an estimated U Visa petition processing time of forty-eight months at the Vermont Service Center. (*See* https://egov.uscis.gov/processing-times/ (last updated Sept. 29, 2018); Defs. Resp. 56.1 ¶ 22.)

### b. Statutory and regulatory framework

### i. U Visa program

In October of 2000, Congress passed the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386, 114 Stat. 1464, which amended the Immigration and Nationality Act ("INA"), and created the U Visa program. *See* 8 U.S.C. § 1101(a)(15)(U). Congress enacted the U Visa program to provide immigration relief to certain victims of crime who cooperate with law enforcement in the investigation or prosecution of a crime. *Id*. USCIS, a component of the United States Department of Homeland Security ("DHS"), (Defs. Mem. 1), failed to promulgate regulations implementing the U Visa program for several years until Congress directed the agency to do so within 190 days in the Violence Against Women and Department of Justice Reauthorization Act of 2005 ("Violence Against Women Act"), Pub. L. 109-162, 119 Stat. 2960.

To qualify for a U Visa, a petitioner must demonstrate "that he or she has suffered substantial physical or mental abuse as a result of having been a victim of a qualifying crime, has credible or reliable information about the crime, has or is helping law enforcement in prosecuting the crime, and is admissible to the United States." 8 C.F.R. § 214.14(b); 8 C.F.R. § 214.1(a)(3).

To apply for a U Visa, a petitioner is required to submit a Form I-918 U Visa Petition along with a written and sworn certification from law enforcement personnel stating that the petitioner was a victim of a qualifying crime and helpful in the investigation or prosecution that followed.[5] 8 C.F.R. § 214.14. After a petitioner submits an application, USCIS reviews and processes the application in the order received at either its Vermont Service Center or the

---

[5] Applicants may also petition for derivative status for qualifying relatives. *See* 8 U.S.C. § 11101(a)(15)(U)(ii)).

Nebraska Service Center.  8 C.F.R. § 214.14(d)(2).  If USCIS approves a U Visa petition, the

petitioner will receive a U Visa and an EAD for four years.  8 U.S.C. § 1184(p)(3).  The number

of U Visas that USCIS can issue in each fiscal year is limited by statute to 10,000.  8 U.S.C. §

1184(p)(2).

On October 17, 2007, anticipating that USCIS would begin to receive meritorious U Visa

petitions exceeding the annual statutory cap of 10,000 within the first few fiscal years after

enactment of the U Visa program, USCIS published a rule creating a regulatory waiting list

procedure (the "waiting list").  8 C.F.R. § 214.14.  Pursuant to this process, once the 10,000

statutory cap has been reached for the fiscal year, "[a]ll eligible petitioners who, due solely to the

cap, are not granted U-1 non-immigrant status must be placed on a waiting list."  *See* 8 C.F.R. §

214.14(d)(2).  Accordingly, prior to a petitioner's entry on the waiting list, USCIS conducts a

substantive review of the petition and determines whether it is meritorious.  At the beginning of

each new fiscal year, USCIS reviews U Visa petitions from the waiting list to ensure the

petitioners remain eligible and grants U Visas in the order in which the petitions were filed until

the 10,000 visas are allocated.  (Decl. of Dustin J. Stubbs in Supp. of Defs. Mot. ("Stubbs

Decl.") ¶ 8, Docket Entry No. 37.)

The number of new U Visa petitions filed each year has increased significantly over the

last several years, as has the number of U Visa petitions on the waitlist and the petitions waiting

to be adjudicated for waitlist status.  (Defs. Mem. 4 (citing USCIS Form I-918 Petition Chart,

https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigrat

ion%20Forms%20Data/Victims/I918u_visastatistics_fy2017_qtr2.pdf  (last visted Sept. 30,

2018)).)  In fiscal year 2009, USCIS received 6,835 new U Visa petitions.  (*Id.*)  In fiscal year

2016, USCIS received 35,044 new U Visa petitions, and by the end of fiscal year 2016, there

were 86,980 U Visa petitions pending.  (*Id.*)  As of March of 2017, there were over 97,000

pending U Visa petitions, including those already placed on the waiting list.  (*Id.*)

### ii.  Process for obtaining an EAD

When a U Visa petitioner receives a U Visa, they also receive employment authorization.

(Defs. Mem. 2.)  Pursuant to 8 C.F.R. § 214.14(d)(2), once USCIS places a U Visa petitioner on

the waiting list, USCIS grants "deferred action,"[6] to the principal petitioner, as well as derivative

family members who are in the United States, and, "in its discretion, USCIS may authorize

employment for such petitioners and qualifying family members" ("section 214.14(d)(2) Waiting

List EAD").  8 C.F.R. § 214.14(d)(2).  USCIS does not grant any benefits to those petitioners

whose cases have not yet been reviewed for placement on the waiting list.  (Defs. Resp. 56.1 ¶

25.)

On December 23, 2008, after the waiting list regulatory system had been in place

approximately one year, Congress enacted the William Wilberforce Trafficking Victims

Protection Reauthorization Act (the "TVPRA"), Pub. L. 110-457, 122 Stat. 5044.  The TVPRA

included a new provision, codified in 8 U.S.C. § 1184(p)(6), specifying that the "Secretary [of

DHS] may grant work authorization to any alien who has a pending, bona fide application for

nonimmigrant status under section 1101(a)(15)(U) of this title," ("section 1184(p)(6) EAD

Pending Petition").[7]  Defendants contend that section 1184(p)(6) is a "discretionary statute"

which they "have never implemented."  (Defs. Mem. 19; Defs. Reply 6; *see also* Defs. Resp.

---

[6]  Deferred action is an interim form of discretionary protection from deportation.  (Pl.
Mem. 7.)

[7]  The bill's sponsors explained that U Visa applicants "should not have to wait for up to
a year before they can support themselves and their families," and that USCIS should strive to
issue work authorization within 60 days of filing.  *See* 154 Cong. Rec. H10,888, 10,905 (daily
ed. Dec. 10, 2008) (statement of Reps. Berman and Conyers), 2008 WL 5169865.

56.1 ¶ 23 ("USCIS has not exercised its discretion to implement the permissive statute authorizing it to grant employment authorization to those with 'pending, bona fide' U petitions.").) According to Defendants, "USCIS does not grant work authorization to U-visa petitioners based on their petitions prior to adjudicating their petitions for the waitlist," even though section 1184(p)(6) EAD Pending Petition provides USCIS authority to do so. (Defs. Mem. 19; Defs. Resp. 56.1 ¶ 25; Defs. Reply 7.).

In August of 2015, at the time Plaintiff submitted his U Visa petition and EAD application, the relevant regulation, 8 C.F.R. § 274a.13(d),[8] provided that "USCIS will adjudicate the [EAD] application within 90 days from the date of receipt of the application" and further provided that "[f]ailure to complete the adjudication within 90 days will result in the grant of an employment authorization document for a period not to exceed 240 days," ("section 274a.13(d) Interim EAD").[9] 8 C.F.R. § 274a.13(d).

When Plaintiff filed his Form I-918 U Visa Petition, U Visa petitioners could apply for an EAD by marking a checkbox on the form, which read "I want an Employment Authorization Document."[10] (Defs. Resp. 56.1 ¶ 14; Form I-918.) The instructions to the Form I-918 U Visa

---

[8] A revised version of section 274a.13(d) went into effect on January 17, 2017. *See* "Retention of EB-1, EB-2, and EB-3 Immigrant Workers and Program Improvements Affecting High-Skilled Nonimmigrant Workers," 81 Fed. Reg. 82398 (Nov. 18, 2016). Because it was the regulation in effect at the time Plaintiff filed his petition, the Court will refer to former 8 C.F.R. § 274a.13(d) as "section 274a.13(d) EAD Adjudication Deadline" and note when referring to the revised regulation.

[9] The revised rule eliminates both the ninety-day processing time-period for EAD applications and the issuance of interim EADs for those applications not adjudicated within this timeframe. (Defs. Mem. 6–7.)

[10] In February of 2017, the Form I-918 U Visa P checkbox was removed from the revised Form I-918. (Defs. Resp. 56.1 ¶ 18.)

Petition did not state that a petitioner was required to file any other form to apply for an EAD.[11] (Defs. Resp. 56.1 ¶ 16.)  Nor did the instructions to the Form I-918 U Visa Petition indicate that a petitioner had to take any additional action in order to apply for an EAD.  (*Id*. ¶ 17.)  It was USCIS practice at the time to provide a receipt for the Form I-918 U Visa Petition and a separate receipt for an EAD application to applicants who submitted a Form I-918 U Visa Petition with the EAD box checked.  (Pl. 56.1 ¶ 19.)

USCIS does not have a regulatory framework in place to govern petitions that are waiting for a merit-based review for placement on the waiting list, (Defs. Resp. 56.1 ¶ 23), and does not adjudicate EAD applications prior to adjudicating their placement on the U Visa waiting list, (*id*. at ¶ 23; Stubbs Decl. ¶ 16).  Nor does USCIS determine whether U Visa petitions are "bona fide" pursuant to section 1184(p)(6) EAD Pending Petition at any point prior to making a determination for placement on the waiting list.  (Defs. Resp. 56.1 ¶ 23.)

### c.  Defendants' responses to Plaintiff's Rule 56.1 statement

Defendants state that they can "neither admit nor deny" nineteen of the thirty-eight statements in Plaintiff's Rule 56.1 Statement of Undisputed Facts because Plaintiff's U Visa Petition "has not been reviewed by USCIS adjudicators for eligibility."  (*See generally* Defs. Resp. 56.1.)  Under Local Rule 56.1, each fact put forth in a statement of undisputed facts "will be deemed to be admitted . . . unless specifically controverted by a correspondingly numbered paragraph in the statement [of] the opposing party."  Local R. 56.1(c).  Because Defendants' responses do not specifically controvert Plaintiff's factual allegations, the Court treats them as admissions.  *See Russell v. Aid to Developmentally Disabled, Inc.*, No. 12-CV-389, 2017 WL

---

[11]  Form I-765 ("Form I-765 Application for Employment Authorization") was an available alternative form for filing for an EAD.

4357412, at *1 n.3 (E.D.N.Y. Sept. 30, 2017); *see also Shortt v. Congregation KTI*, No. 10-CV-2237, 2013 WL 142010, at *1 (S.D.N.Y. Jan. 9, 2013) (finding "[p]laintiff can neither admit nor deny" to be an insufficient response to establish a disputed fact). While courts may permit such formulations where the parties have not engaged in discovery, *see, e.g.*, *Dorceant v. Aquino*, No. 15-CV-7103, 2017 WL 3575245, at *2 (E.D.N.Y. Aug. 17, 2017), here Defendants have the relevant evidence but have not reviewed it, (*see* Decl. of Marutollo in Supp. of Defs. Mot. ("Marutollo Decl."), Docket Entry No. 36; Stubbs Decl., Docket Entry No. 37.) In addition, some of the statements which Defendants decline to admit or deny concern the U Visa program generally, and not the specific facts of Plaintiff's petition. (*See, e.g.*, Defs. Resp. 56.1 ¶ 19.) Under these circumstances, the Court deems admitted all of the uncontroverted statements.

## II. Discussion

### a. Standards of review

#### i. Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013).  Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### ii.  Rule 56

Summary judgment[12] is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015).  The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.*  The court's function is

---

[12] Defendants move to dismiss or, in the alternative, for summary judgment.  (*See* Defs. Mot.)  The Court finds that Defendants' motion is properly construed as one for summary judgment because it includes materials outside the pleadings. *Sira v. Morton*, 380 F.3d 57, 66 (2d Cir. 2004) ("A district court must convert a motion for judgment on the pleadings to one for summary judgment if the motion includes material 'outside the pleadings' and that material is 'not excluded by the court.'" (quoting former Fed. R. Civ. P. 12(c), current Fed. R. Civ. P. 12(d))); *see also Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) ("Even where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted" (citation omitted)).

to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

When a court evaluates multiple motions for summary judgment, each party's motion must be evaluated "on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Bryne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010) (citation omitted).

### b. Defendants' challenge to the Court's jurisdiction

Defendants argue that the Court is without jurisdiction to consider a "challenge [to] the process implemented by USCIS for the adjudication of U Visa applications and the issuance of work authorization to eligible applicants," pursuant to 8 U.S.C. § 1252(g) and 5 U.S.C. § 701(a)(2). (Defs. Mem. 20.)

Plaintiff argues that the statutory provisions cited by Defendants are both inapplicable, as section 1252(g) applies "'only to three discrete actions that the Attorney General may take' within the *deportation* process, none of which applies here," (Pl. Mem. 6 (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–83 (1999)), and section 701(a)(2) is operative only when "there is 'no law to apply,'" (*id.* (quoting *Salazar v. King*, 822 F.3d 61, 76 (2d Cir. 2016)); *see also* Pl. Reply 4 n.2 (arguing that "the relevant statutes and regulations provide amply 'law to apply'").)

### i. 8 U.S.C. § 1252(g) does not deprive the Court of jurisdiction

With exceptions not applicable to this action, 8 U.S.C. § 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or

execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). This jurisdictional bar only applies to claims arising from the Attorney General's actions in the context of removal proceedings. *See Reno*, 525 U.S. at 478 (holding that "[t]he provision applies only to three discrete actions" taken by the Attorney General, to "commence proceedings, adjudicate cases, or execute removal orders against any alien," and rejecting the view that section 1252(g) applies to "other decisions or actions that may be part of the *deportation process*" (emphasis added)); *Han Cao v. Upchurch*, 496 F. Supp. 2d 569, 574 (E.D. Pa. 2007) (concluding that "[s]ection 1252(g) has no application at all" in a case where the plaintiffs sought an order compelling USCIS to act on their applications to adjust their immigration status to that of permanent residency (first citing *Li v. Agagan*, No. 04-CV-40705, 2006 WL 637903 (5th Cir. Mar. 14, 2006); and then citing *Sabhari v. Reno*, 197 F.3d 938, 942 (8th Cir. 1999))); *Mitova v. Chertoff*, No. 07-CV-2631, 2007 WL 4373045, at *4 (E.D. Pa. Dec. 13, 2007) ("Unlike 1252(a)(2)(B), § 1252(g) contains no language making it applicable to all immigration decisions."); *Bondarenko v. Chertoff*, No. 07-MC-00002, 2007 WL 2693642, at *7 (W.D.N.Y. Sept. 11, 2007) (finding that "[i]t is well-settled that § 1252(g) limits judicial review only with respect to three discretionary decisions made in the removal context" and therefore "courts have routinely held that where a petition for adjustment of status "is separate and distinct from any matter related to an order of deportation, § 1252(g) 'has nothing to do with the . . . case'" (collecting cases)); *Burger v. McElroy*, No. 97-CV-8775, 1999 WL 203353, at *4 (S.D.N.Y. Apr. 12, 1999) ("Several courts have found that the limits on judicial review contained in Section 1252(g) apply only in the context of removal proceedings." (citations omitted)).

Defendants acknowledge that Plaintiff "challenge[s] the process implemented by USCIS for the adjudication of U Visa applications and the issuance of work authorization to eligible

applicants," (Defs. Mem. 20), and not any actions in connection with removal proceedings. Section 1252(g) therefore does not deprive the Court of jurisdiction.

### ii. 5 U.S.C. § 701(a)(2) does not deprive the Court of jurisdiction

The Court reaches a similar conclusion as to 5 U.S.C. § 701(a)(2), which provides that courts may not review agency action "committed to agency discretion by law." *See Salazar*, 822 F.3d at 75–76 (quoting 5 U.S.C. § 701(a)(2)) (finding that although "[t]here is a strong presumption favoring judicial review of administrative action," that presumption is "subject to a narrow exception: the APA's prohibition against judicial review of agency action 'committed to agency discretion by law'"). Where the statutes or regulations at issue in a case "are drawn in such broad terms that . . . there is no law to apply," courts cannot discern meaningful boundaries to fetter agency discretion. *Id.* (quoting *Westchester v. U.S. Dep't of Hous. & Urban Dev.*, 778 F.3d 412, 419 (2d Cir. 2015)). "To determine whether there is 'law to apply' that provides 'judicially manageable standards' for judging an agency's exercise of discretion, the courts look to the statutory text, the agency's regulations, and informal agency guidance that govern the agency's challenged action." *Id.* Agency regulations can provide a court with law to apply because "where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required." *Id.* at 76 (quoting *Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991)). The Second Circuit has explained that:

> Though the agency's discretion is unfettered at the outset, if it announces and follows — by rule or by settled course of adjudication — a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as arbitrary, capricious or an abuse of discretion.

*Id.* at 76–77 (quoting *INS v. Yang*, 519 U.S. 26, 32 (1996)); *see also Brezler v. Mills*, 220 F.

Supp. 3d. 303, 326 (E.D.N.Y. 2014) ("The Navy, like any other agency, must comply with its own binding rules." (citing *Smith v. Resor*, 406 F.2d 141, 145 (2d Cir. 1969))); *cf. Prospect Heights Action Coal. v. City of New York*, No. 02-CV-4693, 2002 WL 32096583, at *5 (E.D.N.Y. Oct. 22, 2002) (crediting a theory that "the city's allegedly deliberate failure to comply with its own regulations, if proved, would be the sort of arbitrary governmental action proscribed by the Due Process Clause." (quoting *C.A.U.T.I.O.N., Ltd. v. City of New York*, 898 F. Supp. 1065, 1074 (S.D.N.Y. 1995))).

Plaintiff does not seek review of agency action "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), but rather alleged agency inaction with respect to *non-discretionary* agency actions. (*See generally* Pl. Mem.) As discussed below, Plaintiff alleges that Defendants have failed to timely adjudicate his pending U Visa and EAD applications. While the decision to grant or deny Plaintiff's applications implicates an agency's exercise of discretion, the question of whether that adjudication has been unlawfully withheld or unreasonably delayed does not. *See INS v. St. Cyr*, 533 U.S. 289, 307–08 (2001) (finding plaintiff had a right to a ruling, even if the *outcome* of that ruling is discretionary). Moreover, Plaintiff's claims are based on multiple statutes and agency regulations[13] containing "judicially manageable standards" for judging any agency exercise of discretion, and Defendants do not argue otherwise.

Accordingly, the Court has jurisdiction to review Plaintiff's claims. *See Villa v. U.S. Dep't of Homeland Sec.*, 607 F. Supp. 2d 359, 362 (N.D.N.Y. 2009) (rejecting challenges to the court's jurisdiction under 5 U.S.C. § 701 and 8 U.S.C. § 1252(g)).

---

[13] These include: 8 U.S.C. § 1101(a)(15)(U); 8 U.S.C. § 1184(p)(6); 8 C.F.R. § 274a.13(d); and 8 C.F.R. § 214.14(d).

### c. Plaintiff's APA claims

The Court next addresses each of Plaintiff's APA claims (1) to compel USCIS to adjudicate his application for an EAD under section 1184(p)(6); (2) to compel an interim EAD pursuant to section 274a.13(d); and (3) to compel adjudication of his U Visa petition.

### i. Plaintiff's APA claim to compel agency action under 8 U.S.C. § 1184(p)(6)

Plaintiff alleges that "USCIS has categorically refused to adjudicate [his] EAD application" as required by section 1184(p)(6) EAD Pending Petition. (Am. Compl. ¶¶ 48–52; Pl. Mem. 5.) Plaintiff argues that Defendants' refusal "to comply with its nondiscretionary duty to provide [him] with a ruling constitutes 'agency action unlawfully withheld or unreasonably delayed' under the APA." (Pl. Mem. 5 (citing 5 U.S.C. § 706(1)).)

Defendants contend that they have not unreasonably delayed or unlawfully withheld agency action for three reasons. Defendants first argue that Plaintiff has not submitted the appropriate form to apply for an "actionable" EAD under section 1184(p)(6) EAD Pending Petition. (Defs. Mem. 26–27.) Defendants next argue that the implementation of section 1184(p)(6) EAD Pending Petition is purely discretionary and they have chosen not to implement the statute. (*Id*. at 18–21; Defs. Reply 7–8.) Third, Defendants argue that, even if implementation of section 1184(p)(6) is not discretionary, USCIS has effectively and reasonably implemented the statute through its regulatory waiting list system. (Defs. Reply 8–11.) The Court addresses each of Defendants' arguments.

### 1. Plaintiff applied for an EAD pursuant to section 1184(p)(6)

As a threshold matter, Defendants dispute whether Plaintiff has filed an EAD application pursuant to section 1184(p)(6) EAD Pending Petition. (Pl. Mem. 18; Defs. Reply 4–7.) The parties agree that Plaintiff checked a box on his Form I-918 U Visa Petition that read "I want an

Employment Authorization Document."  (Pl. 56.1 ¶ 14; Form I-918.)  Plaintiff maintains that

this constituted an application for an EAD that is actionable under section 1184(p)(6) EAD

Pending Petition.  (Pl. Reply 5.)  Defendants concede that this act indicated that Plaintiff was

applying for employment authorization upon *approval* of his U Visa petition but dispute "that the

checked box on Form I-918 constituted an actionable application for employment authorization

based on a pending, bona fide U petition."  (Defs. Resp. 56.1 ¶¶ 13–18; Defs. Mem. 34–35; Defs.

Reply 5.)

Undoubtedly and undisputedly, Plaintiff applied for an EAD pursuant to the instructions

available to him in 2015 when he filed his U Visa petition.  The USCIS regulations in place at

the time Plaintiff applied for a U Visa provided that

> For principal aliens seeking their first EAD based upon U
> nonimmigrant status, USCIS will use the information contained in
> Form I-918 to automatically generate an EAD, *such that a separate
> request for an EAD is not necessary* . . . USCIS has designed the
> Form I-918 so that it serves the dual purpose of requesting U
> nonimmigrant status and their employment authorization to
> streamline the application process.  Therefore, *principal aliens will
> not have to file additional paperwork to obtain an initial EAD*.

New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status,

72 Fed. Reg. 53,014 (Sept. 17, 2007) (emphasis added).

Defendants' argument that Plaintiff was required to separately file a Form I-765

Application for Employment Authorization to have applied for an EAD on the basis of section

1184(p)(6) fails for two principal reasons.  (*Id.*)  First, at the time Plaintiff submitted his Form I-

918 U Visa Petition in August of 2015, no statutes, regulations, or instructions indicated that

Plaintiff was required to file a Form I-765 in order to apply for an EAD pursuant to 1184(p)(6).

(*See* 2015 Form I-765, annexed to Wishnie Decl. as Ex. I, Docket Entry No. 44-21; 2015 Form I-

765 Instructions, annexed to Wishnie Decl. as Ex. J, Docket Entry No. 44-22; Defs. Resp. 56.1

¶¶ 16–17; Form I-918.)  Indeed, at the time, the instructions for the Form I-765 Application for Employment Authorization instructed U Visa petitioners to "file Form I-765 *only* if you did not request an employment authorization document when you applied for U nonimmigrant status." (2015 Form I-765 Instructions (emphasis added).)

Second, it does not appear that Plaintiff could have applied for an EAD pursuant to section 1184(p)(6) by filing a Form I-765 as Defendants suggest.  As Plaintiff notes, USCIS has routinely rejected such applications from U Visa petitioners using the Form I-765 Application for Employment Authorization on the ground that section 1184(p)(6) EAD Pending Petition is not an appropriate basis for EAD eligibility.  (*See* Pl. 56.1 Addendum ¶¶ 5–7, Docket Entry No. 44-2; Decl. of Carolien Hardenbol ("Hardenbol Decl.") in Supp. of Pl. Mot., annexed to Wishnie Decl. as Ex. H, Docket Entry No. 44-3; Notices of Action, annexed to Hardenbol Decl. as Exs. H-2B–H-16B, Docket Entry No. 44-5–44-19.)  This is consistent with Defendants' argument that U Visa petitioners are not eligible to be considered for employment authorization until their petitions have been reviewed and placed on the waiting list.  (Defs. Mem. 6–7.)  Defendants' admission that USCIS never implemented section 1184(p)(6) EAD Pending Petition further belies its argument that Plaintiff applied incorrectly for relief under this section.  (*Id*.)  Thus, even if Plaintiff had applied for an EAD by submitting a Form I-765 Application for Employment Authorization as Defendants suggest, it appears that Defendants would not have adjudicated his application prior to his entry on the waiting list.

The Court finds that Plaintiff applied for an EAD in the manner available to him at the time he filed his application — and in a manner USCIS' internal regulations equated with filing a Form I-765 Application for Employment Authorization — by checking the box requesting an EAD on his Form I-918 U Visa Petition.

### 2. Section 1184(p)(6) requires USCIS to adjudicate EAD applications for applicants with pending, bona fide U Visa petitions

The parties agree that whether Plaintiff is entitled to a *grant* of employment authorization under section 1184(p)(6) EAD Pending Petition is a matter of agency discretion. (Defs. Mem. 18–19; Pl. Reply 7–8.) The parties dispute, however, whether the *adjudication* of Plaintiff's EAD application pursuant to section 1184(p)(6) is also a matter of agency discretion. (*Id.*)

Section 1184(p)(6) EAD Pending Petition states in relevant part: "The Secretary [of DHS] may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." 8 U.S.C. § 1184(p)(6). Congress enacted this provision in 2008 as part of the TVPRA, in light of the growing number of U Visa petitions, to provide interim relief to immigrants with pending, bona fide U Visa petitions. *See* 154 CONG. REC. H10,888, 10,905 (daily ed. Dec. 10, 2008) (statement of Reps. Berman and Conyers), 2008 WL 5169865.

### A. Defendants have a duty to adjudicate Plaintiff's application

Defendants argue that they are not required to adjudicate EAD applications pursuant to section 1184(p)(6) EAD Pending Petition because the statute (1) is discretionary, (2) does not provide standards for making bona fide determinations, and (3) does not provide a timeframe governing adjudications.

The Supreme Court has held in the context of immigration relief that when a statute provides specific standards of eligibility for a benefit or relief, an individual applying for that relief has a "right to a ruling," even if the *outcome* of that ruling is discretionary. *St. Cyr*, 533 U.S. at 307–08 ("Eligibility that was governed by specific statutory standards provided a right to a ruling on an applicant's eligibility, even though the actual granting of relief was not a matter of

right under any circumstances, but rather is in all cases a matter of grace." (internal quotation marks omitted) (citing *Jay v. Boyd*, 351 U.S. 345, 353–54 (1956))); *see also Rodriguez v. Gonzales*, 451 F.3d 60, 62 (2d Cir. 2006) (distinguishing the question of eligibility for discretionary relief from the decision of how to exercise that discretion) (citing *St. Cyr*, 533 U.S. at 307–08).

Several district courts in the Second Circuit have applied the same reasoning to hold that immigration authorities have a non-discretionary duty to adjudicate applications in the context of INA provisions providing for discretionary relief. *Richards v. Napolitano*, 642 F. Supp. 2d 118, 134 (E.D.N.Y. 2009) ("There is no dispute that defendants owe a 'clear nondiscretionary duty' to plaintiff to adjudicate her I-130 petition and I-485 application in accordance with law."); *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 546 (S.D.N.Y. 2008) (finding agency had a non-discretionary duty to adjudicate immigration petition "implied from Congress' explicit delegation of the power (and responsibility) to process form I-485 applications, in conjunction with the general § 555(b) requirement that an agency complete its delegated tasks with a reasonable time."); *Hoo Loo v. Ridge*, No. 04-CV-5553, 2007 WL 813000, at *3 (E.D.N.Y. Mar. 14, 2007) (finding that the court has jurisdiction to review [the plaintiff's] non-discretionary, purely legal claim that defendants are required to review her application)); *Am. Acad. of Religion v. Chertoff*, No. 06-CV-588, 2006 WL 1751254, *16 (S.D.N.Y. June 23, 2006) (holding that the regulation stating that consular officials either "issue or refuse" a completed visa creates a duty to adjudicate); *see also Tang v. Chertoff*, 493 F. Supp. 2d 148, 154–55 (D. Mass. 2007) ("[W]hile it is undisputed that the substance of the [agency's] decision is discretionary, [it] does not have discretion to decide not to adjudicate at all." (collecting cases)); *Yu v. Brown*, 36 F. Supp. 2d 922, 931–32 (D.N.M. 1999) (finding that the INS owed the plaintiff a duty to process

her application for a change of status to permanent resident); *Dabone v. Thornburgh*, 734 F. Supp. 195, 200 (E.D. Pa. 1990) (holding the BIA owed plaintiff a duty to adjudicate his motion to reopen an exclusion proceeding).

### (1) Adjudications pursuant to section 1184(p)(6) are not discretionary

Defendants contend that section 1184(p)(6) EAD Pending Petition is a "discretionary statute" which they "never implemented." (Defs. Mem. 19; Defs. Reply 6; *see also* Defs. Resp. 56.1 ¶ 23 ("USCIS has not exercised its discretion to implement the permissive statute authorizing it to grant employment authorization to those with 'pending, bona fide' U petitions.").) Defendants do not address *St. Cyr* or provide any persuasive authority for their argument that Plaintiff is not entitled to an adjudication of his EAD application.[14] Instead, Defendants assert that because section 1184(p)(6) EAD Pending Petition "does not require that plaintiff be *issued* an EAD," Plaintiff cannot assert a claim for relief related to the *adjudication* of his pending EAD application. (Defs. Mem. 18 (emphasis added).)

Defendants conflate the discretionary language governing grants of employment authorization in the statute ("may grant") with the nature of the statute itself. (Defs. Mem. 19; Defs. Reply 6.) Plaintiff is asserting a right to an *adjudication* under the statute, not a right to an EAD. (*See* Pl. Reply 7–8.) While Defendants are not obligated to grant Plaintiff an EAD, they

---

[14] Defendants rely on *Lopez v. Davis*, 531 U.S. 230 (2001), to argue that the permissive language in section 1184(p)(6), also present in the statute at issue in *Lopez*, renders regulatory implementation of the statute discretionary. In *Lopez*, decided before *INS v. St. Cyr*, 533 U.S. 289, 307–08 (2001), the Supreme Court assessed a Bureau of Prisons regulation interpreting a statutory directive that "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons." *Lopez*, 531 U.S. at 231. The Supreme Court did not hold, and the government did not assert, that it was permitted to disregard the statute at issue entirely as Defendants claim they are entitled to do here. In fact, the issue before the Supreme Court in *Lopez* related to a regulatory provision the government had already enacted to implement the statute.

are obligated to adjudicate his application.  *See Nigmadzhanov*, 550 F. Supp. 2d at 546 ("Of course, the Attorney General has unfettered (and hence, unreviewable) discretion whether *to grant or deny* an application.  However, one cannot infer from that the existence of discretion *to never decide it at all.*" (citing *Kim v. Ashcroft*, 340 F. Supp. 2d at 384, 389 (S.D.N.Y. 2004))).

> **(2) USCIS does not require further congressional direction to make bona fide determinations under section 1184(p)(6)**

Defendants also argue that they have no duty to adjudicate employment authorization applications under section 1184(p)(6) EAD Pending Petition because the statute does not provide a standard for determining what constitutes a bona fide application.  (Defs. Mem. 19.)

Although section 1184(p)(6) EAD Pending Petition does not define "bona fide" in the context of a U Visa petition, Defendants acknowledge that "the definition of 'bona fide' in the T-visa context is instructive."[15]  (Defs. Reply 9; *see also* Defs. Resp. 56.1 ¶ 24.)  This definition is provided in an agency *regulation*, promulgated by USCIS to give effect to the statutory T Visa framework.  The legislation creating the T Visa does not define "bona fide," though it uses the term.  *See* Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464.  To the extent USCIS anticipates confusion surrounding this term, nothing prevents USCIS from promulgating such a regulation in the U Visa context.  The Court is not persuaded by Defendants' argument that it cannot adjudicate Plaintiff's EAD because bona fide is not defined in section 1184(p)(6).

---

[15]  The T Visa allows certain victims of a severe form of trafficking in persons and their immediate family members to remain and work temporarily in the United States.  *See* 8 U.S.C. § 1101(a)(15)(T).  In the T Visa context, an application is considered bona fide once it "has been initially reviewed and determined that the application does not appear to be fraudulent, is complete and properly filed, includes completed fingerprint and background checks, and presents prima facie evidence of eligibility."  8 C.F.R. § 214.11(a).

### (3)  USCIS has sufficient direction to implement section 1184(p)(6)

Defendants also argue that the lack of Congressional direction to the agency about the implementation of section 1184(p)(6) EAD Pending Petition and the lack of a timeframe for the issuance of an EAD renders the implementation of this provision discretionary.  (Defs. Mem. 18–19.)

This argument is disingenuous.  None of the other statutory provisions governing the U Visa program and related work authorization contain a timeframe for adjudications.  *See* 8 U.S.C. § 1101(a)(15)(U); 8 U.S.C. § 1184(p).  Even USCIS' own regulations implementing these statutes fail to provide such deadlines.  *See* 8 C.F.R. § 214.14(d)(2).  Furthermore, at the time Congress passed section 1184(p)(6), a timeframe would have been unnecessary in light of section 274a.13(d), which, as discussed below, provided a ninety-day timeframe for the agency to adjudicate EAD applications.  USCIS does not need direction from Congress on how to implement work authorization processes in this context.  *See Bellevue Hosp. Ctr. v. Leavitt*, 443 F.3d 163, 180 (2d Cir. 2006) ("Congress need not explicitly tell an agency to implement a program 'in full,' any more than it need tell the agency to do the job 'competently'").  USCIS already screens applications, makes bona fide determinations for T Visa applications, among others, and routinely grants work authorization, including in the U Visa context.  *See, e.g.*, 8 C.F.R. § 274a.13; 8 C.F.R. § 214.14(d)(2).  Moreover, the agency is free to promulgate regulations, like section 214.14(d)(2) Waiting List EAD, to govern the implementation of section 1184(p)(6).

Furthermore, a lack of a timeframe alone does not render the statute optional.  *Sultan v. Roark*, No. 09-CV-02158, 2010 WL 1992195, at *5 (E.D. Cal. May 13, 2010) ("The absence of a specified deadline within which action must be taken does not change the nature of USCIS'

obligation from one that is ministerial and mandatory to a matter within the agency's discretion."
(citation omitted)).  The statute providing discretionary relief from deportation in INA § 212(c)
at issue in *St. Cyr* did not provide an explicit timeline for determinations of the applications for
discretionary relief, but the Supreme Court nevertheless found that the statute created a "right to
a ruling."  *Id*. at 307.  The same is true here.

Plaintiff is therefore entitled to a ruling on his pending EAD application under section
1184(p)(6).

### 3. Defendants' refusal to adjudicate Plaintiff's EAD application based on his pending, bona fide U Visa petition constitutes agency action unlawfully withheld

USCIS's policy that it will not review EAD applications based on section 1184(p)(6)
prior to adjudicating the merits of a corresponding U Visa petition constitutes "agency action
unlawfully withheld or unreasonably delayed."[16]  *See* 5 U.S.C. § 706(1).

The APA requires all agencies to conclude matters presented to them "within a
reasonable time," 5 U.S.C. § 555(b), and provides that courts shall "compel agency action
unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  However, courts may do so

---

[16]  Plaintiff also alleges that USCIS' decision not to implement section 1184(p)(6) is
arbitrary and capricious under 5 U.S.C. 706(2)(A) because the agency does not offer an
explanation for why it chose not to implement the statute.  (Pl. Reply 9 n.8 (citing *Nat. Res. Def.
Council v. U.S. E.P.A.*, 658 F.3d 200, 215 (2d Cir. 2011) ("The record must show that the agency
examined the relevant data and articulated a satisfactory explanation for its action." (internal
marks omitted)).  Although not explicitly stated, Defendants appear to argue that their decision
not to adjudicate EAD applications prior to waitlist status determinations was made due to
resource constraints and the high number of petitions.  (*See* Defs. Mem. 20–21.)  This is a
permissible justification.  *See Islander E. Pipeline Co., LLC v. McCarthy*, 525 F.3d 141, 150–51
(2d Cir. 2008) ("[I]n deciding whether agency action is arbitrary and capricious, a court
considers whether the agency "relied on factors which Congress has not intended it to consider,
entirely failed to consider an important aspect of the problem, offered an explanation for its
decision that runs counter to the evidence before the agency, or is so implausible that it could not
be ascribed to a difference in view or the product of agency expertise." (quoting *Motor Vehicle
Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983))).

only when "an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). A failure to act "is simply the omission of an action without formally rejecting a request — for example, the failure to promulgate a rule or take some decision by a statutory deadline." *Norton*, 542 U.S. at 64. "When an administrative agency simply refuses to act upon an application, the proper remedy — if any — is an order compelling agency action." *McHugh v. Rubin*, 220 F.3d 53, 61 (2d Cir. 2000).

Defendants contend that USCIS "never implemented" section 1184(p)(6) EAD Pending Petition and that "USCIS does not grant work authorization to U-visa petitioners based on their petitions prior to adjudicating their petitions for the waitlist." (Defs. Mem. 19; Defs. Reply 6; Defs. Resp. 56.1 ¶ 22.) Plaintiff argues that Defendants' "categorical refusal to comply with a statutory duty" pursuant to section 1184(p)(6), "is the very definition of agency action unlawfully withheld." (Pl. Reply 8.) The Court agrees. Defendants cite no authority — and the Court is aware of none — suggesting that an agency can refuse to implement a statute where, as here, Congress provides specific standards of eligibility for a benefit. *See St. Cyr*, 533 U.S. 289, 307–08.

The parties agree that section 1184(p)(6) EAD Pending Petition requires a preliminary determination short of a full adjudication on the merits of a U Visa application — pending petitions need only be bona fide, not meritorious.[17] (Defs. Reply 9.) Yet, USCIS only adjudicates EAD applications from petitioners whose petitions have been deemed meritorious

---

[17] The parties agree that bona fide determinations require that the petition "has been initially reviewed and determined that the application does not appear to be fraudulent, is complete and properly filed, includes completed fingerprint and background checks, and presents prima facie evidence of eligibility." (Defs. Reply 9; *see also* Defs. Resp. 56.1 ¶ 24 (citing 8 C.F.R. § 214.11(a).)

and placed on the list.  In deciding not to implement section 1184(p)(6), which permits

applicants with pending, bona fide U Visa petitions to obtain EADs, USCIS "refuses to act

upon" an entire class of applications, *McHugh*, 220 F.3d at 61, and has failed to promulgate rules

implementing a statutory benefit, *Norton*, 542 U.S. at 64.  Defendants are not unreasonably

delaying provision of relief under section 1184(p)(6) EAD Pending Petition, but instead have

decided not to implement that provision and to provide no relief pursuant to its terms.  (*See* Defs.

Mem. 19; Defs. Reply 6.)

    As discussed above, Plaintiff — as a U Visa petitioner with a pending, bona fide

petition[18] — has a right to an adjudication on his work authorization application pursuant to

section 1184(p)(6) EAD Pending Petition.  Defendants' decision not to implement this statute

and to ignore work authorization applications from all U Visa petitioners who have not yet been

placed on the waitlist therefore constitutes "agency action unlawfully withheld."  *See* 5 U.S.C. §

706(1).

    Defendants' argument that the regulatory waiting list system — governed by different

statutes and regulatory provisions — satisfies the requirements of section 1184(p)(6) to

adjudicate pending, bona fide applications is unpersuasive.  (Defs. Mem. 19.)  Defendants argue

that a bona fide determination necessarily takes place during the merits based review process for

waiting list status and, once on the list, petitioners can apply for an EAD pursuant to section

214.14(d)(2) Waiting List EAD.  (*Id.*)

---

[18]  Plaintiff alleges in the Complaint that his application is bona fide, but he does not state this fact in his Rule 56.1 Statement of Undisputed Facts.  (*See* Pl. 56.1.)  While undisputed portions of the Rule 56.1 Statement contain some of the elements for a bona fide determination as defined in the T Visa context, they do not contain all of the elements.  Defendants do not contest that Plaintiff's petition is bona fide and instead claim that they have not reviewed it.  (*See* Defs. Resp. 56.1.)

This argument is not supported by the evidence and appears to be a *post hoc* rationalization by Defendants in view of their admission that they did not implement section 1184(p)(6). The text, timing, and legislative history of section 1184(p)(6) EAD Pending Petition demonstrate that Congress intended to extend work authorization to bona fide petitioners *prior* to an adjudication of their applications on the merits. Defendants do not deny that section 1184(p)(6)'s reference to "pending, bona fide" applications includes applications that are waiting to be reviewed to determine if they should be placed on the waiting list. The term bona fide demonstrates that Congress intended to extend eligibility to petitioners based on a threshold determination, not a merits based review. At the time of its passage, USCIS already had procedures in place to provide work authorization to petitioners on the waiting list. Congress enacted section 1184(p)(6) EAD Pending Petition on December 23, 2008, over a year *after* USCIS began providing work authorization to those on the regulatory waiting list. *See* TVPRA, Pub. L. 110-457, 122 Stat. 5044; New Classification for Victims of Criminal Activity (2008); Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53,014, 53,014 (Sept. 17, 2007). In enacting section 1184(p)(6) EAD Pending Petition, the sponsors of the bill stated "Immigrant victims of . . . violent crimes should not have to wait for up to a year before they can support themselves and their families." *See* 154 CONG. REC. H10,888, 10,905 (daily ed. Dec. 10, 2008) (statement of Reps. Berman and Conyers), 2008 WL 5169865. The sponsors of the bill further stated that USCIS should strive to issue work authorization within sixty days of the filing of an application.[19] *Id*.

Defendants' argument also presumes that section 1184(p)(6) EAD Pending Petition is

---

[19]  Defendants fail to explain why Congress would provide USCIS with authority to grant work authorizations to this class of applicants if USCIS was already satisfactorily doing so through the waiting list system.

duplicative of already existing law (section 214.14(d)(2) Waiting List EAD) — rendering the statute superfluous. *See Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 156 (2d Cir. 2013) ("[O]ne of the most basic interpretive canons[ is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (citing *Corley v. United States*, 556 U.S. 303, 314 (2009))). A finding that Section 1184(p)(6) is superfluous would "violate[] the familiar doctrine that Congress cannot be presumed to do a futile thing." *Halverson v. Slater*, 129 F.3d 180, 185 (D.C. Cir. 1997) (rejecting argument that a specific delegation statute does not "provide any delegation authority beyond what [the agency head] already possesses under [a general delegation statute], and thus, at most, merely confirms his . . . authority [under that general delegation statute]").

Finally, Defendants argue that the "delay here is reasonable in light of the exponential increase in U filings" and "complexity and time-consuming nature of the two-step adjudication process." (Defs. Reply 10.) However, the Court need not reach the issue of whether the delay is reasonable because it finds that the right to an adjudication under section 1184(p)(6) EAD Pending Petition has been unlawfully withheld.[20] *See Nat. Res. Def. Council, Inc. v. Fox*, 93 F. Supp. 2d 531, 543 (S.D.N.Y. 2000) (finding "the components of § 706(1) — 'unreasonably delayed' and 'unlawfully withheld' — are mutually exclusive." (citing *Forest Guardians v. Babbitt*, 164 F.3d 1261, 1272 (10th Cir. 1998))), *aff'd in part, vacated in part on other grounds sub nom. Nat. Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91 (2d Cir. 2001).

Accordingly, Defendants' policy that it will not adjudicate EAD applications for

---

[20] Even if the Court were to consider whether the delay in adjudicating Plaintiff's EAD was reasonable, Defendants have not provided any evidence from which the Court could make such a determination. Defendants' justifications for the delay relate only to the number of U Visa petitions, not the number of work authorization applications. (*See* Defs. Reply 10.)

petitioners, like Plaintiff, with pending, bona fide U Visa petitions pursuant to section 1184(p)(6) is agency action unlawfully withheld. Pursuant to the relief provided for in 5 U.S.C. § 706(1), the Court compels Defendants to review Plaintiff's petition to determine whether he is entitled to work authorization under section 1184(p)(6).[21]

### ii. Plaintiff's APA claim to compel an interim EAD pursuant to 8 C.F.R. § 274a.13(d)

In addition to seeking to compel Defendants to adjudicate his EAD application pursuant to section 1184(p)(6), Plaintiff also seeks to compel Defendants to adjudicate his application for an EAD within ninety days or issue him an interim EAD pursuant to section 274a.13(d). When Plaintiff applied for an EAD in August of 2015, section 274a.13(d) Interim EAD provided that "USCIS will adjudicate the [EAD] application within 90 days from the date of receipt of the application" and further provided that "[f]ailure to complete the adjudication within 90 days will result in the grant of an employment authorization document for a period not to exceed 240 days." 8 C.F.R. § 274a.13(d).

Plaintiff argues that because the government has failed to adjudicate his EAD application

---

[21] Defendants argue that such an outcome permits Plaintiff to move "to the front of the line." (Defs. Mem. 21.) While there is support for this argument within the context of determining whether agency action has been "unreasonably delayed," *see Hoo Loo v. Ridge*, No. 04-CV-5553, 2007 WL 813000, at *3 (E.D.N.Y. Mar. 14, 2007), the Court need not make a reasonableness determination in deciding whether agency action was "unlawfully withheld." In any event, the fact that USCIS has also ignored other, similar applications does not inure to Defendants' favor or render its decision to unlawfully withhold agency action reasonable. *See Alkeylani v. DHS*, 514 F. Supp. 2d 258, 266 (D. Conn. 2007) ("While [lack of resources] may be a legitimate policy crisis, the Court will not excuse Defendants from their statutory duty and let the cost fall on immigrant plaintiffs."); *Tang v. Chertoff*, 493 F. Supp. 2d 148, 158 (D. Mass. 2007) ("If the agencies involved find themselves short of the resources necessary to fulfill their statutory duty to act within a reasonable time, that is a policy crisis. But it is not plaintiffs who ask the Court to take on the burden of remedying this crisis. Rather, it is defendants who ask the Court to relieve the pressure by excusing them from their statutory duty and letting the costs fall on immigrant plaintiffs."); *Jeffrey v. INS*, 710 F. Supp. 486, 488 (S.D.N.Y. 1989) (finding that the fact that administrative delay was "not unusual" did not necessarily mean it was "reasonable.").

within ninety days or issue him an interim EAD as required by section 274a.13(d) Interim EAD, (Am. Compl. ¶ 54), USCIS has unlawfully withheld or unreasonably delayed agency action, (Pl. Mem. 16 (citing 5 U.S.C. § 706(1)).

Although Defendants agree that section 274a.13(d) Interim EAD required "USCIS to issue interim EADs if USCIS did not adjudicate an application for employment authorization within 90 days," (*id*. at 13–14; Defs. Reply 11–12), Defendants argue that EAD applications such as Plaintiffs that are based on section 1184(p)(6) EAD Pending Petition did not qualify for the benefits of section 274a.13(d). Defendants further argue that section 274a.13(d) Interim EAD "has been wholly eliminated through rulemaking, is not binding on USCIS, and created no ongoing 'vested right' to Plaintiff." (Defs. Reply 11.) Finally, Defendants assert that their interpretation of section 274a.13(d) Interim EAD is entitled to *Auer* deference.

### 1. Section 274a.13(d) applies to EAD applications based on 1184(p)(6)

Defendants were required to adjudicate Plaintiff's EAD application pursuant to the regulatory timeframe provided in section 274a.13(d). The parties agree that section 274a.13(d) Interim EAD "was undoubtedly intended to apply broadly across a comprehensive listing of employment authorization classifications." (Defs. Reply 12 (internal quotation marks omitted); Pl. Reply 11.) Defendants argue, however, that section 274a.13(d) Interim EAD does not apply to EAD applications like Plaintiff's, based on pending, bona fide U Visa petitions, because a separate regulatory provision listing bases for work authorization ("section 274a.12 Classes of Aliens") does not specifically enumerate section 1184(p)(6) EAD Pending Petition as a basis for employment eligibility. (Defs. Mem. 24–25.)

Section 274a.12, titled "Classes of aliens authorized to accept employment," does not purport to provide an exhaustive description of all qualifying bases for work authorization. The

list includes U Visa *recipients*, *see* 8 C.F.R. § 274a.12(a)(19), but U Visa *petitioners* applying for

an EAD under section 1184(p)(6) EAD Pending Petition are not listed. Defendants' decision not

to include this latter category in section 274a.12 Classes of Aliens — likely because they "never

implemented" section 1184(p)(6) — does not strip Plaintiff of his statutory grant of work

authorization eligibility pursuant to section 1184(p)(6) EAD Pending Petition.

Furthermore, nothing in section 274a.13(d) Interim EAD limits its benefits to only those

bases of employment eligibility listed in section 274a.12 Classes of Aliens, nor does it provide

an exhaustive list of qualifying bases. Instead, it identifies three specific bases as exceptions that

do not qualify for relief under the provision.[22] 8 C.F.R. § 274a.13(d). Because none of the three

exceptions provided under the regulation applies to Plaintiff, his statutory eligibility for an EAD

pursuant to section 1184(p)(6) entitles him to the protections of section 274a.13(d). *See Greene*

*v. United States*, 79 F.3d 1348, 1355 (2d Cir. 1996) ("The ancient maxim *expressio unius est*

*exclusio alterius* (mention one impliedly excludes others) cautions us against engrafting an

additional exception to what is an already complex [statute].").

### 2. Plaintiff has a vested right to an adjudication of his EAD application under section 274a.13(d)

Defendants argue that the Court should apply the revised section 274a.13(d) to Plaintiff's

claim because the agency gave "fair notice" of the changed regulation through the rule making

process and because "plaintiff can have no 'reasonable reliance' or 'settled expectation' on the

issuance of an interim EAD, as USCIS has never issued interim EAD to individuals in his

circumstance." (Defs. Mem. 23.)

---

[22] Section 274a.13(d) states: "USCIS will adjudicate the application within 90 days from the date of receipt of the application, except as described in 8 CFR 214.2(h)(9)(iv), and except in the case of an initial application for employment authorization under 8 CFR 274a.12(c)(8) . . . and 8 CFR 274a.12(c)(9) in so far as it is governed by 8 CFR 245.13(j) and 245.15(n)." 8 C.F.R. § 274a.13(d).

Plaintiff argues that applying the revised section 274a.13(d) to his EAD application would have an impermissibly retroactive effect because it would strip Plaintiff of his vested right to an adjudication within ninety days or an interim EAD. (Pl. Reply 12.)

"The principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal." *Centurion v. Sessions*, 860 F.3d 69, 74 (2d Cir. 2017) (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990)). As a result, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208–09 (1988); *see also Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) ("[A] statute shall not be given retroactive effect unless such construction is required by explicit language or by necessary implication."). The Supreme Court established a two-step framework for determining retroactivity in *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). *See Centurion v. Sessions*, 860 F.3d 69, 75 (2d Cir. 2017) (applying the *Landgraf* framework to a provision of the INA). Under the first step, a court looks to whether Congress expressly provided that the statute applies retroactively. *Id*. at 269. If "the statue contains no such express command," a court moves on to the second step, which examines whether the law has a "retroactive effect." *Id.* at 280. This analysis requires an assessment of "the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event," as well as "whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 270. A statute is impermissibly retroactive if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Id.* at 269 (quoting *Soc'y for Propagation*

*of the Gospel v. Wheeler*, 22 F.Cas. 756 (No. 13,156) (CCNH 1814). Rights vest when an individual has "availed himself of them or [taken] action that enhanced their significance to him in particular." *Fernandez-Vargas*, 458 U.S. at 44 n.10.

Applying step one of the *Landgraf* framework, the revised section 274a.13(d) is silent as to retroactivity and Defendants do not claim otherwise. *See* 8 C.F.R. § 274a.13(d). As to the second step, the Court finds that applying the revised rule retroactively to Plaintiff's claim would "tak[e] away or impair[] [Plaintiff's] vested rights acquired under existing laws." *Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (quoting *Wheeler*, 22 F.Cas. at 767 (finding statute limiting travel of lawful permanent residents with certain convictions did not apply retroactively to aliens with convictions predating its enactment)).

Under the prior version of section 274a.13(d) Interim EAD, Plaintiff had the right to have his EAD application adjudicated within ninety days or receive an interim EAD. Plaintiff's right to an adjudication within ninety days vested when Plaintiff applied for an EAD, and his right to receive an interim EAD vested when USCIS failed to adjudicate his application within ninety days. *See Fernandez-Vargas*, 458 U.S. at 44 n.10 (finding rights vest on the date a petitioner avails himself of them or "took action that enhanced their significance to him in particular"). The application of the revised section 274a.13(d), which removes both the ninety-day adjudication timeframe and issuance of the interim EAD, would strip Plaintiff of these vested rights. *See Vartelas*, 566 U.S. at 266.

Defendants argue that "filing an application for an administrative benefit does not create a vested right in that benefit." (Defs. Reply 15.) The Court agrees that Plaintiff has no vested right to the administrative benefit for which he applied — an EAD pursuant to section 1184(p)(6) EAD Pending Petition. However, Defendants conflate Plaintiff's lack of entitlement

to this administrative benefit (an EAD) with his entitlement to the nondiscretionary benefits provided under section 274a.13(d) Interim EAD (adjudication within ninety days or an interim EAD). Plaintiff did not apply for an interim EAD under section 274a.13(d), but, pursuant to that regulation, he has a right to an interim EAD because Defendants failed to adjudicate his EAD application within ninety days. (Pl. Reply 12.)

The Court is also unpersuaded by Defendants' argument that Plaintiff could not have "reasonably relied" on section 274a.13(d) Interim EAD because "USCIS has never issued interim EAD to individuals in his circumstance." (Defs. Mem. 23.) Defendants offer no evidence that Plaintiff knew, or could have known, of this unstated USCIS policy such that he could not rely on the plain language of the statutory provision. In any event, "reasonable reliance" is "not a necessary predicate for invoking the antiretroactivity principle." *Vartelas*, 566 U.S. at 273–74.

Accordingly, Plaintiff has a vested right to have his EAD application adjudicated within ninety days or receive an interim EAD pursuant to section 274a.13(d) Interim EAD. (Pl. Reply 12.) *See Fernandez-Vargas*, 458 U.S. at 44 n.10. Because the application of the revised rule would strip Plaintiff of these vested rights, it "would have retroactive effect" that Congress did not authorize. *Id*.

### 3. Defendants' request for *Auer* deference is misplaced

Defendants argue that, "to the extent the regulation language is ambiguous," their interpretation of section 274a.13(d) Interim EAD is entitled to *Auer* deference as an agency's interpretation of its own regulations. (Defs. Reply 14.) The agency interpretation to which Defendants refer is a USCIS policy that the ninety-day period to adjudicate an EAD application provided by section 274a.13(d) did not commence "until the individual became eligible for work

authorization through waiting list deferred action under 8 C.F.R. § 214.14(d)(2)." (*Id.*) Pursuant to this policy, Defendants contend that USCIS had no obligation to adjudicate Plaintiff's EAD application prior to his placement on the waiting list. (*Id.*)

*Auer* deference governs an agency's interpretation of its own regulations. *Auer v. Robbins*, 519 U.S. 452, 463 (1997). Where those regulations are ambiguous, courts must defer to the agency's interpretation "unless that interpretation is plainly erroneous or inconsistent with the regulation[s] or there is any other reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter." *Mullins v. City of New York*, 653 F.3d 104, 106 (2d Cir. 2011) (quoting *Talk Am., Inc. v. Michigan Bell Tel. Co. dba AT&T Michigan*, 564 U.S. 50 (2011)). Textual ambiguity is a pre-requisite for the application of *Auer* deference. *Christiensen v. Harris Cty.*, 529 U.S. 576, 588 (2000) ("*Auer* deference is warranted only when the language of the regulation is ambiguous.").

Defendants' interpretation of when the ninety days commences for applications based on section 214.14(d)(2) Waiting List EAD is irrelevant to the question presented here. As discussed above, Plaintiff bases his claim of employment authorization eligibility on section 1184(p)(6) EAD Pending Petition, not section 214.14(d)(2) Waiting List EAD. As a result, the Court need not determine whether *Auer* deference should be applied to a USCIS interpretation concerning work authorization applications based on section 214.14(d)(2) Waiting List EAD.

Moreover, Defendants cannot convincingly argue that the language in section 274a.13(d) is ambiguous. Section 274a.13(d) Interim EAD states "USCIS will adjudicate the application within 90 days from the date of receipt of the application." As a result, at least as applied to applications under section 1184(p)(6) EAD Pending Petition, the ninety-day time period began to

run as of the filing of Plaintiff's Form I-918 U Visa Petition.[23]  *Cruz-Miguel v. Holder*, 650 F.3d 189, 195 (2d Cir. 2011) ("Statutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there." (quoting *Dobrova v. Holder*, 607 F.3d 297, 301 (2d Cir. 2010))).

Finally, to the extent Defendants are asserting an agency interpretation as to the review of applications pursuant to section 1184(p)(6) EAD Pending Petition, this new interpretation can only be "a post hoc rationalization advanced by an agency seeking to defend past agency action against attack." *Auer*, 519 U.S. at 462.  Defendants admit they never review applications for work authorization under section 1184(p)(6) EAD Pending Petition.  (Defs. Mem. 19; Defs. Reply 6.)  Defendants cannot have a policy interpreting a regulatory program that does not exist.  As such, this interpretation is not entitled to *Auer* deference.

### 4.  Defendants are required to comply with section 274a.13(d)

As Plaintiff notes, and Defendants do not contest, the language of section 274a.13(d) Interim EAD is not discretionary — it provides that USCIS "*will* adjudicate" applications within ninety days and failure to do so "*will* result in the grant" of an interim EAD.  (Pl. Mem. 14.) Defendants' admit that USCIS did not, and never intended to, perform these "discrete agency action[s] that it is required to take." *See Norton*, 542 U.S. at 64.  As a result, the Court finds that

---

[23]  Defendants argue that Plaintiff's theory "would be wholly unreasonable, as it would have required USCIS to review tens of thousands of EAD applications within ninety days, before reviewing the U petitions on their merits to determine eligibility for the U waiting list and the deferred action on which the EAD applications are based." (Defs. Mem. 26.)  Defendants are incorrect.  Defendants again conflate EAD applications like Plaintiff's based on pending, bona fide U Visa petitions (section 1184(p)(6)) with EAD applications based on waiting list status (section 214.14(d)(2)).  Thus, the "tens of thousands" of applications brought pursuant to that latter provision are irrelevant to the question presented here.  Furthermore, even if each ninety-day review period required the review of "tens of thousands" of section 1184(p)(6) EAD applications, Defendants had the option under section 274a.13(d) EAD Adjudication Deadline to issue interim EADs to those petitioners whose applications USCIS could not reach within the ninety-day period.

Defendants "unlawfully withheld" agency action and orders Defendants to comply with section 274a.13(d).  *See Yakubova v. Chertoff*, No. 06-CV-3203, 2006 WL 6589892, at *3 (E.D.N.Y. Nov. 2, 2006) ("An application is unlawfully withheld if the agency fails to meet a clear deadline prescribed by Congress." (citing *Forest Guardians*, 164 F.3d at 1272)).

### iii.  Plaintiff's APA claim to compel adjudication of his U Visa petition

Separate and apart from his applications seeking to compel adjudication of his EAD application, Plaintiff also seeks to compel adjudication of his U Visa petition.  Plaintiff applied for a U Visa on August 11, 2015, over three years ago.  (Pl. 56.1 ¶ 13.)  To date, Defendants have not taken any action with respect to Plaintiff's petition.  (*See generally* Defs. Resp. 56.1.) Plaintiff alleges that USCIS has unreasonably delayed a determination of his eligibility for the U Visa waiting list and asks the Court to compel Defendants to "promptly determine his eligibility for a U-visa or declare that Defendants' failure to do so was unlawful." (Pl. Mem. 20–30.)  In the alternative, Plaintiff seeks discovery as to the reasonableness of this delay.[24]  (*Id*.)

Defendants contend that they cannot provide an estimate for how long Plaintiff's application will remain pending before his application is adjudicated for placement on the waiting list.  (Defs. Resp. 56.1 ¶ 32.)  Defendants argue that "*any* delay in Plaintiff's waitlist determination is reasonable" in light of the high number of U Visa petitions, limited resources, and the complexity of the review process.  (Defs. Reply 15 (emphasis added); *see also* Defs. Mem. 14.)

---

[24]  USCIS regulations require that "[a]ll eligible petitioners who, due solely to the [statutory] cap, are not granted U-1 nonimmigrant status must be placed on a waiting list."  8 C.F.R. § 214.14(d)(2).  "Priority on the waiting list will be determined by the date the petition was filed with the oldest petitions receiving the highest priority."  *Id*.  While there is a statutory cap on the number of U Visas granted each year, there is no cap on the number of petitioners USCIS can place on the waiting list.  *Id*.  Indeed, USCIS created the waiting list to address the influx of petitioners the government now cites as the reason for its delay.  (*See* Stubbs Decl. ¶¶ 5–6; Defs. Mem. 3.)

The APA requires an agency to conclude matters presented to it "within a reasonable time," 5 U.S.C. § 555(b), and provides that a reviewing court can "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1). "In determining reasonableness, we look to the source of delay — e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." *Reddy v. CFTC*, 191 F.3d 109, 120 (2d Cir. 1999). Courts in the Second Circuit also consider the six factors set forth in *Telecommunications. Research & Action Center. v. FCC*, 750 F. 2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") to determine whether an agency's delay is reasonable. *See, e.g.*, *Xu v. Nielsen*, No. 18-CV-2048, 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018) ("To determine whether an agency's adjudication delay is reasonable under the APA, courts regularly apply the six factors set forth in [*TRAC*]"); *Gong v. Duke*, 282 F. Supp. 3d 566, 568 (E.D.N.Y. 2017); *L.M. v. Johnson*, 150 F. Supp. 3d 202, 207 (E.D.N.Y. 2015); *Hoo Loo*, 2007 WL 813000 at *4. The *TRAC* factors include:

> 1) the time agencies take to make decisions governed by a rule of reason; 2) where Congress has provided a timetable, it may be relevant to determine the rule of reason; 3) delays that might be reasonable concerning economic regulation are less reasonable when human welfare and health are at stake; 4) the effect of expediting delayed action on agency activities of a higher or competing authority; 5) the nature and extent of interests prejudiced by the delay and; 6) the court need not find any impropriety behind agency delay to hold that the delay is unreasonable.

*TRAC*, 750 F.2d at 80.

The Court has insufficient information upon which to identify "the source of delay," the agency's allocation of its resources, and the extent to which Defendants may have "participated in delaying the proceedings." *See Reddy*, 191 F.3d at 120. Although Defendants provide the overall number of pending U Visa petitions, they do not provide how many of these pending petitions have been placed on the waiting list. Defendants deny Plaintiff's assertion that "[o]nly

a small percentage of the total number of U-visa petitioners are on the waitlist at any time,"[25]

(Defs. Resp. 56.1 ¶ 26), but decline to provide the actual figure. These numbers are critical to

discerning the rate of review and thus the reasonableness of Defendants' delay. Without this

necessary information, the Court cannot agree with Defendants' argument that "any delay" in

waiting list adjudications is reasonable in light of the high volume of applications the agency

receives. (Defs. Mem. 14.)

Moreover, the parties appear to dispute whether the delays are due primarily to either the

allocation of limited resources or to the increasing volume of applicants. *See Cordoba v.*

*McElroy*, 78 F. Supp. 2d 240, 245 (S.D.N.Y. 2000) (denying motion to dismiss because

"although the government's statistics seem impressive, they do not necessarily carry the day. . . .

Perhaps plaintiffs here might establish facts which, notwithstanding the volume of cases before

the INS, would make out a nonfrivolous claim of a violation of Section 6 of the APA"). In

particular, Defendants fail to satisfactorily explain why the priority date for review of

applications for the waiting list did not advance a single day over a seventeen-month period in

2015 and 2016. (*See* Defs. Resp. 56.1 ¶ 31.) Neither increasing petitions nor limited resources

can account for what appears to be a complete hiatus in adjudicating petitions.[26]

For these reasons, the Court dismisses both parties' motions as premature, without

---

[25] Defendants deny this statement because "it involves a subjective and nonspecific relative comparison." (Defs. 56.1 ¶ 26.) This is the only statement that Defendants deny in Plaintiff's Rule 56.1 statement. (*See generally id.*)

[26] Defendants attempt to justify this delay by claiming that, until recently, 100% of USCIS resources were dedicated to allocating the annual 10,000 visas to people already on the waiting list instead of adjudicating petitions for entry onto that list. (Defs. Mem. 5.) However, according to Defendants, this process only takes approximately three months at the start of each fiscal year. (Decl. of Dustin J. Stubbs in Supp. of Defs. Mot. ("Stubbs Decl.") ¶ 10, Docket Entry No. 37.) It is unclear where these resources are allocated in the remaining months.

prejudice to renew after the completion of discovery on the issue of whether the delay in adjudicating Plaintiff's U Visa petition is unreasonable.[27] *See Yakubova*, 2006 WL 6589892, at *4 (finding on issue of reasonable delay under the APA that "none of defendants' submissions on this motion have been tested by discovery and plaintiffs should be allowed some discovery on this issue" (citations omitted)); *Kim,* 340 F. Supp. 2d at 393 ("Although it is entirely possible that this delay is reasonable, there is insufficient information upon which to base such a determination at this [motion to dismiss] stage in the proceedings.").

### d. Plaintiff's mandamus claim

Plaintiff seeks a writ of mandamus to compel Defendants to (1) adjudicate Plaintiff's EAD application under section 1184(p)(6) EAD Pending Petition; (2) issue an interim EAD pursuant section 274a.13(d) Interim EAD; and (3) to adjudicate Plaintiff's eligibility for the waiting list within a reasonable time. (Pl. Mem. 30; Am. Compl. ¶¶ 60–75.)

The Mandamus Act grants courts authority "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (internal quotation marks omitted). For relief under the statute, there must be "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and

---

[27] Defendants object to discovery and argue the Court should instead remand to the agency for additional investigation or explanation. (Defs. Reply 19 (citing *State of New York Dep't of Soc. Servs. v. Shalala*, 21 F.3d 485, 493 (2d Cir. 1994).) Defendants rely on decisions regarding discovery into specific administrative hearings and proceedings in support of this argument. (*See* Defs. Reply 19 (citing *NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 195 (3d Cir. 2006).) However, Plaintiff is not seeking discovery with respect to a denial or hearing related to his particular U Visa petition. Rather, Plaintiff requests discovery to assess "the reasonableness of USCIS's delays" in adjudicating petitions for the waiting list. (Pl. Reply 19–20.)

(3) no other adequate remedy available." *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989)

(quoting *Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir. 1972)); *see also Khanom v. Kerry,* 37

F. Supp. 3d 567, 577 (E.D.N.Y. 2014).

Plaintiff is not entitled to mandamus relief because he has other adequate remedies

available under the APA.

## III.  Conclusion

For the foregoing reasons, the Court compels Defendants to adjudicate Plaintiff's

application for work authorization within ninety days or issue Plaintiff an interim EAD pursuant

to 8 U.S.C. § 1184(p)(6) and 8 C.F.R. § 274a.13(d).  In addition, with respect to the claims

related to Plaintiff's entitlement to an adjudication of his U Visa petition, the Court dismisses

both parties' motions as premature, without prejudice to renewal upon completion of discovery.


SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge


Dated:  September 30, 2018
        Brooklyn, New York